UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEMA KEOMIE STRAWTHER, | No. 2:18-cv-02755 DAD CKD P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| PATRICK COVELLO,[1] | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his November 2013 conviction for first degree murder, assault with a firearm, discharge of a firearm at an inhabited dwelling, and being a felon in possession of a firearm. The trial court sentenced petitioner to 97 years to life in state prison. Petitioner argues that the state court erred when it allowed the prosecutor to cross-examine him about his access to pretrial discovery. After reviewing the record, this Court concludes that the petition should be denied.

II. Procedural History

In November 2013, a jury convicted petitioner of first degree murder, assault with a

---

[1] Patrick Covello, Warden at Mule Creek State Prison, is hereby substituted as the respondent in this action pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases.

1

firearm, discharge of a firearm at an inhabited dwelling, and being a felon in possession of a firearm, and found as true allegations that petitioner personally discharged a firearm. (ECF No. 26-2 at 44-47.) The trial court sentenced him to a determinate term of 22 years eight months plus an indeterminate term of 75 years to life in state prison. (Id. at 90-93.)

Petitioner appealed to the California Court of Appeals, which affirmed the conviction. (ECF Nos. 26-7 to 26-10.) Next, he filed a petition for review in the California Supreme Court, which the court summarily denied. (ECF Nos. 26-11 & 26-12.) Petitioner filed at least one state habeas petition, which the state appellate court denied. (ECF Nos. 26-13 & 26-14.)

Petitioner filed a federal habeas petition on August 8, 2018, raising two claims. (ECF No. 1.) Because claim two was unexhausted, this Court asked petitioner to inform the Court whether he wanted to renew his motion for a stay under Rhines v. Weber, 544 U.S. 269 (2005) or amend his petition by omitting claim two and requesting a stay on the amended petition pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002). (ECF No. 10.) Petitioner chose the latter option and filed an amended petition omitting claim two, and this Court granted petitioner's request to stay the amended petition. (ECF Nos. 11-17.) Petitioner subsequently informed this Court that he would like to proceed on his amended petition, and this Court lifted the stay. (ECF No. 20.) Respondent filed an answer to the amended petition on June 18, 2020. (ECF Nos. 25-26.) Petitioner did not file a traverse.

III. Facts[2]

After independently reviewing the record, this Court finds the appellate court's summary accurate and adopts it herein.[3] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal provided the following factual summary:

> Ahmed Ishaque called Lee Vue to ask for money. Ishaque explained he owed $150 to a guy and "it wouldn't be good for him" not to repay

---

[2] The facts are taken from People v. Strawther, No. C075902, 2017 WL 942715 (Cal. Ct. App. Mar. 10, 2017), a copy of which was lodged by respondent as ECF No. 26-10.

[3] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing evidence).

the money. Vue understood Ishaque had lost the money in a drug deal. Ishaque picked up Vue in a borrowed van and they went to visit another man Vue hoped could help, but they returned to Vue's house empty-handed. As Vue got out of the van, he noticed someone with dark skin and dark clothing behind the van's passenger seat. The man held a handgun near his chest. Frightened, Vue jumped out and ran toward his house as shots rang out from the van.

Later that morning a firefighter paramedic was dispatched to a Sacramento freeway off-ramp where he found Ishaque by the side of the road. A spent .380 bullet casing was on the ground a couple of feet away. An autopsy determined Ishaque died from a gunshot wound to the head. Ishaque's phone was not recovered but records showed he received a 5:16 a.m. call from defendant's phone.

Defendant was arrested and an officer retrieved a loaded .380–caliber Beretta semiautomatic pistol from defendant's pocket. The bullet retrieved from Ishaque's head matched defendant's weapon. Based on cell tower evidence, his cell phone was in the same location as the murder victim's phone during all relevant times; after making contact from different locations, the two phones traveled together from near defendant's home to the vicinity of the sidewalk shooting, to the site where the victim's body was recovered and on toward the park where the van was found.

Defendant testified on his own behalf, saying he was outside his mother's apartment on the night of the crimes when he ran into a homeless man who asked to use his cell phone. He handed the phone to the man who handed it to an unknown Asian woman who said she and her male companion named Fee were trying to get high. When defendant went into the apartment to use the bathroom, the others left with his cell phone.

According to defendant, Fee returned with a man introduced as "D" who offered to sell defendant the gun police retrieved from his pocket when he was arrested. Defendant called D later. The number defendant identified as D's belonged to Ishaque. Defendant went to a party that day and deleted the record of numbers dialed from his phone. He said he had the gun in his pocket when he was arrested because he was on his way to sell it to someone named Dashawn. Defendant denied killing Ishaque; in fact, he denied having ever met Ishaque or Vue or ever having been in the van.

During the prosecutor's cross-examination of defendant, defendant confirmed it had been more than two years since his arrest. The prosecutor asked, "And you have had access to all of the discovery in this case for over two years?" Defense counsel objected. During a recess out of the presence of the jury, defense counsel argued the prosecutor's question abridged defendant's exercise of the right to counsel. The trial court overruled the objection. Defendant later answered the question, acknowledging he had the phone and interview records for a couple of years.

The prosecutor's closing argument included a statement that the defendant "kind of had to testify" to explain "why his phone placed

3

> a noose around his neck and why he had the murder weapon." He then suggested defendant had spent two years thinking about the case and "skillfully skiing through a forest of evidence." The prosecutor described the extensive telephone evidence presented at trial, noting significant discrepancies between that evidence and defendant's testimony at trial.
>
> The jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a)),[] assault with a firearm (§ 245, subd. (a)(2)), discharge of a firearm at an inhabited dwelling house (§ 246), and being a felon in possession of a firearm (former § 12021, subd. (a)(1)). The jury found true special circumstance allegations involving the firearm (§§ 12022.53, 12022.5) and the trial court found that defendant had a prior serious felony conviction. The trial court sentenced defendant to an aggregate determinate term of 22 years 8 months plus an indeterminate term of 75 years to life in prison.

(ECF No. 26-10 at 2-4.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The court looks to the last reasoned state court decision as the basis for the state court's judgment. Stanley v. Cullen, 633 F.3d 852, 859-60 (9th Cir. 2011). The California Court of Appeal's decision on direct appeal is the last reasoned state court decision with respect to petitioner's claim. (ECF No. 26-10.) Petitioner bears the "burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

V. Petitioner's Claim

Petitioner argues that the state court erred when it allowed the prosecutor to cross-examine petitioner about pre-trial discovery. Specifically, he takes issue with the prosecutor's questions about his "access to all the discovery in this case for over two years." (ECF No. 26-5 at 119; see also id. at 170-71.) At trial, defense counsel objected to this line of questioning, and the court overruled the objection. (Id. at 119, 165-69.) In his habeas petition, petitioner claims that prosecutor's impeachment of his credibility based on "his ability to access and examine discovery

5

materials penalized [him] for exercising his Fourteenth Amendment due process right to discovery, his Fifth and Sixth Amendment rights to testify on his own behalf, and his Sixth Amendment right to assistance of counsel." (ECF No. 13 at 1.) Respondent contends that a fairminded jurist could agree with the state court's rejection of this claim. (ECF No. 25 at 12.)

On the merits, this Court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (establishing the "look through" doctrine in federal habeas cases). On direct appeal, the state appellate court considered and rejected petitioner's claim.

> Defendant contends the trial court committed reversible error in allowing the prosecutor to cross-examine defendant about defendant's access to pretrial discovery. He argues the cross-examination penalized defendant's exercise of his constitutional rights by transforming his review of discovery into an impeachment device.
>
> Defendant begins by noting that the Fifth Amendment forbids comments by the prosecutor on the silence of a defendant who declines to testify. (*Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d. 106, 110].) Defendant adds that laws penalizing a defendant for exercising constitutional rights have also been stricken. (*Brooks v. Tennessee* (1972) 406 U.S. 605, 612–613 [32 L.Ed.2d 358, 363–364] [striking law requiring defendant to testify before other defense witnesses]; *United States v. Jackson* (1968) 390 U.S. 570, 582–583 [20 L.Ed.2d 138, 147] [striking death penalty limited to those who exercised Sixth Amendment right to jury].) Defendant concedes, however, that those cases are not on point. Unlike here, they did not involve the prosecutor's cross-examination of a defendant testifying at his own trial.
>
> Defendant also cites *United States v. Kallin* (9th Cir. 1995) 50 F.3d 689, 693, for the proposition that "a prosecutor violates the constitution by commenting on a defendant's decision to exercise his right to retain counsel." That case is also inapposite; here the prosecutor did not comment on defendant's decision to retain counsel.
>
> Defendant next points out that the right to receive and examine discovery from the prosecution is rooted in the Fourteenth Amendment right to due process, citing *Brady v. Maryland* (1963) 373 U.S. 83, 86 [10 L.Ed.2d 215, 218]. However, in that case the court said "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Id.* at p. 87 [10 L.Ed.2d at p. 218].) This case does not involve prosecutorial suppression of

>           evidence.
>
>           Defendant adds that his ability to help his counsel by examining the discovery is an essential aspect of his right to counsel. But the prosecutor did not inquire about attorney-client communications or defense work product. The prosecutor asked if defendant had received evidence from the prosecutor. Defendant cites no authority holding that such a question is improper.
>
>           Defendant contends the prosecutor committed misconduct by implying that defendant's testimony was not credible because he had the opportunity and motive to concoct a story that explained away damaging evidence. But the prosecutor's comments merely urged the jury to question defendant's credibility. In *Portuondo v. Agard* (2000) 529 U.S. 61 [146 L.Ed.2d 47], the Supreme Court said that once a defendant takes the stand " 'his credibility may be impeached and his testimony assailed like that of any other witness.' " (*Id.* at p. 69 [146 L.Ed.2d at p. 56], quoting *Brown v. United States* (1958) 356 U.S. 148, 154 [2 L.Ed.2d 589, 596].) The Supreme Court concluded there was "no reason to depart from the practice of treating testifying defendants the same as other witnesses." (*Portuondo,* at p. 73 [146 L.Ed.2d at p. 59].) Indeed, a prosecutor's comment about a defendant's opportunity to tailor his testimony to the other evidence properly serves the central truth-seeking purpose of trial. (*Ibid*.)
>
>           The trial court did not abridge defendant's constitutional rights in allowing the prosecutor to ask about defendant's receipt of discovery during cross-examination. In any event, given the strength of the evidence against defendant, any error would be harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710] [even in the face of alleged constitutional error, a conviction is upheld if there is no reasonable possibility the challenged evidence might have contributed to the conviction].)

(ECF No. 26-10 at 4-7.)

After reviewing the record, this Court concludes that the state court's rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law. There is no clearly established Supreme Court precedent holding that a prosecutor may not cross-examine a defendant about his access to pretrial discovery even if the question avoids inquiring about attorney client communication or work product. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). As the state court stated, petitioner conceded that there are no cases on point. (ECF No. 26-10 at

4; see also ECF No. 16 at 10 ("Appellant's case presents a question not squarely addressed by any of the foregoing cases – whether the Fifth, Sixth, and Fourteenth Amendments prohibit the prosecution from relying on the defendant's constitutionally protected right to access and peruse discovery materials to impugn the credibility of the defendant's trial testimony."))

Petitioner attempts to analogize his case to existing Supreme Court precedent in several ways. First, petitioner claims that the prosecutor erred because the Fifth Amendment prohibits prosecutors from commenting on the defendant's refusal to testify. (ECF No. 13 at 8-9 (citing Griffin v. California, 380 U.S. 609 (1965)).) He also contends that courts have struck down laws penalizing a defendant for exercising his constitutional rights. (Id. at 9-10 (citing Brooks v. Tennessee, 406 U.S. 605 (1972) and United States v. Jackson, 390 U.S. 570 (1968)).) Second, petitioner asserts that the Sixth Amendment forbids a prosecutor from questioning a defendant about his decision to retain counsel. Id. at 9 (citing United States v. Kallin, 50 F.3d 689 (9th Cir. 1995)).) Third, petitioner argues that the Fourteenth Amendment protects a defendant's right to receive and examine evidence from the state. (Id. at 10-11 (citing Brady v. Maryland, 373 U.S. 83 (1963)).) The state court, however, accurately distinguished those cases, finding that this case does not involve a defendant refusing to testify, or a prosecutor suppressing evidence, or a prosecutor commenting on a defendant's right to retain counsel. (ECF No. 26-10 at 4-5.) This Court concludes that the state court reasonably held that "the prosecutor's comments merely urged the jury to question defendant's credibility," which the Supreme Court deemed permissible in Portuondo v. Agard, 529 U.S. 61 (2000). (Id. at 5.) "Once a defendant takes the stand, he is 'subject to cross-examination impeaching his credibility just like any other witness.'" Agard, 529 U.S. at 70. Habeas relief is not warranted.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 8, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

20/stra2755.hab